UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00041-TBR

WESTLAKE VINYLS, INC.                                                                                              Plaintiff,

v.

GOODRICH CORPORATION, et al.                                                                            Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Dismiss First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant PolyOne Corporation ("PolyOne"). (Docket No. 40.) Also before the Court is the Motion to Dismiss of Defendant Goodrich Corporation ("Goodrich"), filed pursuant to the same rules. (Docket No. 42). Plaintiff Westlake Vinyls, Inc. ("Westlake") has responded to these motions, (Docket No. 49), and each defendant has replied, (Docket Nos. 54, 55). Fully briefed, this matter is now ripe for adjudication. For the reasons explained below, the Court will GRANT the defendants' Motions to Dismiss. (Docket Nos. 40, 42.)

**Factual Background**

This lawsuit is born from the lengthy and complex litigation concerning the allocation of environmental costs arising at the former BF Goodrich Industrial Complex, a Calvert City, Kentucky manufacturing site. After several years of hard-fought proceedings, Westlake, PolyOne, and Goodrich reached consensus and executed a Settlement Agreement. The Agreement provided for arbitration proceedings between Westlake and PolyOne concerning liability for certain environmental costs associated with the Calvert City site. Goodrich is not a

1

party to the Settlement Agreement's arbitration provisions, having specifically agreed that it bears "no right or obligation" with respect to such proceedings. Additionally, the Agreement's forum selection clause establishes exclusive jurisdiction in the Western District of Kentucky over any action or proceeding arising out of or related to the Agreement. (Docket No. 1 at 2-3.)

In March 2010, PolyOne initiated an arbitration proceeding against Westlake concerning liability for various environmental costs. The arbitration panel ordered PolyOne to produce information to Westlake regarding insurance coverage for site-related environmental liabilities. PolyOne itself has asserted no privilege; however, Goodrich has demanded that PolyOne withhold certain documents, pointing to the attorney-client privilege and work product doctrine. When PolyOne initially withheld such documents, the arbitration panel ruled that the Settlement Agreement required their production. (Docket No. 32-1.) Shortly after, the panel granted Goodrich's motion to intervene in the arbitration. PolyOne requested that the panel rescind its order obligating PolyOne to produce insurance-related information in its possession to Westlake; the panel denied this motion. (Docket No. 32 at 6.) After an additional round of briefing, the panel affirmed that PolyOne was required to produce the information at issue.

On March 13, 2014, Goodrich initiated a complaint in an Ohio state court, naming as defendants Westlake, PolyOne, and each of the members of the arbitration panel. *See Goodrich Corp. v. PolyOne Corp., Westlake Chem. Corp., Gordon Doerfer, Eric Van Loon, & William Hartgering*, Court of Common Pleas, Summit County, Ohio, Case No. CV-2014-03-1308. Goodrich sought relief to include a temporary restraining order that would vacate enforcement of the arbitration panel's order, compelling the defendants to instead "keep confidential [Goodrich's] documents protected by the attorney-client privilege and work-product doctrine and settlement negotiation communications related to an action currently pending before the Court of

2

Common Pleas in Summit County, Ohio . . . ." (Docket No. 32-4 at 2.) On the same day, a magistrate entered a temporary restraining order prohibiting PolyOne from producing such documents to Westlake. On March 17, 2014, Westlake removed the Ohio litigation to the United States District Court for the Northern District of Ohio. (Docket No. 32 at 9.)

In this action, Westlake asserts that Goodrich's Ohio state court action violates the Settlement Agreement's form selection clause. Although PolyOne is named as a defendant in the Ohio litigation, Westlake insists that PolyOne has allied itself with Goodrich, violating the Settlement agreement by "actively resist[ing]" Westlake's attempt to litigate in the Western District of Kentucky. (Docket No. 32 at 9.) Westlake seeks a declaratory judgment and injunctive relief preventing Goodrich "from pursuing the matters raised in the Ohio Litigation in any other Court except for the United States District Court for the Western District of Kentucky." (Docket No. 32 at 10-11.) Westlake also raises a breach of contract claim, alleging that Goodrich and PolyOne violated the Settlement Agreement, Goodrich by initiating the Ohio litigation and PolyOne by supporting Goodrich. Westlake claims that both Defendants breached the Settlement Agreement by resisting efforts to have the matters at issue addressed in the Western District of Kentucky. (Docket No. 32 at 12.)

**Legal Standard**

The Court will first address the Defendants' challenge to subject matter jurisdiction, this issue concerning "a threshold determination," *Am. Telecom Co. v. Leb.,* 501 F.3d 534, 537 (6th Cir.2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998)), that "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.,* 512 F.3d 754, 756 (6th Cir.2008). Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed.R.Civ.P. 12(b)(1). "A Rule 12(b)(1) motion

3

can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.,* 491 F.3d 320, 330 (6th Cir.2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.,* 368 F.3d 569 (6th Cir. 2004).

The Court will additionally address the parties' arguments concerning Rule 12(b)(6). "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949.

**Analysis**

Westlake contends that this Court maintains jurisdiction over this litigation based on diversity of the parties, pursuant to 28 U.S.C. 1332. When a party brings a lawsuit to federal court on the alleged basis of diversity jurisdiction, the federal court lacks subject matter jurisdiction over the case unless there is complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332; *Medlen v. Estate of Meyers*, 273 Fed. Appx. 464, 469 (6th Cir. 2008). Generally, the amount alleged in the complaint will be sufficient, unless it appears to a legal certainty that the plaintiff cannot claim the jurisdictional amount in good faith. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). This liberal standard permits dismissal only if it appears that the original claim was really for less than the amount-in-controversy requirement. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993).

However, when the existence of the jurisdictional amount is disputed, the burden of proof falls upon the invoking party to demonstrate the jurisdictional requirements by a preponderance of the evidence. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155) 6th Cir. 1993)); *see also Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1993) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). If the party fails to carry this burden with respect to either requirement, the federal court has no subject matter jurisdiction to hear the case. Despite the parties' agreed-upon forum selection clause, they "can neither waive nor consent to subject

matter jurisdiction . . . ." *Mich. Empl. Sec. Comm'n v. Wolverine Radio Co.*, 930 F.2d 1132, 1137-38 (6th Cir. 1991).

"[A] plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is sufficiently measurable and certain to satisfy the . . . amount in controversy requirement . . . ." *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 675 (S.D. Ohio 2003) (quoting *Ericsson GE Mobile Comm., Inc. v. Motorola Comm. & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997)). Injunctive relief that is "too speculative and immeasurable" fails to satisfy the amount-in-controversy requirement and does not afford federal jurisdiction. Lacking such evidence regarding the amount in controversy, the Court cannot find that Westlake has satisfied its burden of proving that this requirement is satisfied. *See King v. Household Fin.Corp. II*, 593 F. Supp. 2d 958, 960 (E.D. Ky. 2009).

Here, Westlake has not shown that the benefit of the injunctive relief it seeks satisfies the $75,000 jurisdictional threshold. Although Westlake's Amended Complaint avers that it suffered damages in excess of $75,000, (Docket No. 32 at 10), it fails to present sufficient evidence to support its averment, offering only a conclusory allegation as to the harm it suffered. Although a claim for injunctive relief may satisfy the amount-in-controversy requirement, courts generally require specific estimates of harm. *See, e.g.*, *Popa v. CNX Gas Co.*, 2014 WL 1369605 (N.D. Ohio Apr. 7, 2014) (citing estimates of the amount of oil and gas that would be extracted from the property at issue, an analysis of future gas prices, and a calculation of the present value of the lease's projected revenues); *Chesapeake Appalachia, LLC v. Williams*, 2010 WL 4412137 (E.D. Ky. Nov. 1, 2010) (identifying the specific costs alleged in plaintiff's complaint). Westlake's claim lacks such specificity regarding the benefit associated with the injunctive relief it seeks.

Westlake identifies the environmental costs exceeding $1.4 million at the heart of the arbitration. This figure, however, does not relate to the relief that Westlake seeks in *this* action—that is, enforcement of the Settlement Agreement's forum selection clause. The Court must therefore determine the amount in controversy based on Westlake's purported harm arising from the alleged breach of the Settlement Agreement.

The threshold question, then, becomes whether the value of having the parties' dispute adjudicated by this Court, rather than in an Ohio forum, exceeds $75,000. *See Penn. R. Co. v. City of Girard*, 210 F.2d 437, 439 (6th Cir. 1954) (amount in controversy determined by the value of injunctive relief to the plaintiff). Simply put, this relief cannot be subject to monetary valuation. *See Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970) (explaining that the amount-in-controversy requirement is not satisfied when "the right to be protected . . . is incapable of valuation in monetary terms"). Westlake articulates no quanitfiable benefit to litigating in this district, rather than the Northern District of Ohio, that is "sufficiently measurable and certain to satisfy the amount in controversy requirement." *Davis*, 259 F. Supp. at 675.

Westlake points to the attorney fees and costs it incurred in the Ohio case as satisfying the jurisdictional threshold, alleging that these figures represent actual and direct damages it suffered due to the alleged breach. (Docket No. 49 at 6.) However, no apposite authority suggests that the amount in controversy should be measured based on the amount that amount of legal fees that a party is willing to absorb in such a scenario. As Westlake notes, the Sixth Circuit has authorized the award of attorney fees in a case involving a covenant not to sue. *Anchor Motor Freight, Inc. v. Int'l Brotherhood of Teamsters*, 700 F.2d 1067 (6th Cir. 1983). However, such a provision differs fundamentally from a forum selection clause. A covenant not

to sue, of course, seeks to avoid litigation; a forum selection clause serves no such function, only placing the litigation in an agreed-upon forum.

Westlake's reliance upon *Batson v. Clark*, 980 S.W.2d 566 (Ky. Ct. App. 1997), is also misplaced. *Batson* held that a court may consider the specific circumstances of each particular case, using its discretion to determine the suitability of an award of attorney fees. *Id.* at 577. However, this equitable exception is applied only in limited circumstances, and "[e]xactly what circumstances would justify this exception to the general rule has never been spelled out." *Cummings v. Covey*, 229 S.W.3d 59, 62 (Ky. Ct. App. 2007). No binding precedent compels the Court to award attorney fees to remedy what is essentially an alleged breach of contract.

Certainly, Kentucky law does not contemplate an award of attorney fees in such circumstances; rather, "attorney's fees are not allowable as costs in absence of statute or contract expressly providing therefore." *Batson*, 980 S.W.2d at 577 (quoting *Ky. State Bank v. AG Servs., Inc.*, 663 S.W.2d 754, 755 (Ky. App. 1984)). This reasoning accords with the "American Rule," which obligates each party to bear its own attorney fees. Courts considering similar questions have held that attorney fees are not recoverable as damages for breach of a forum selection clause, where such recovery is not specifically provided for in a contractual or statutory provision. *See, e.g.*, *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834 (7th Cir. 2010) (declining to craft an exception to the American Rule in the absence of specific contractual or legislative provision); *Gruver v. Midas Int'l Copr.*, 925 F.2d 280, 284 (9th Cir. 1991) (same). Neither condition is satisfied here: the Settlement Agreement does not provide for the recovery of attorney fees for a breach of the forum selection clause, and no Kentucky statute or court rule authorizes the Court to award attorney fees in this circumstance. *Batson*, therefore, confirms that Westlake cannot recover attorney fees in an action for contract damages. For these reasons,

Westlake has not demonstrated that its claims satisfy the jurisdictional threshold, and the Court consequently lacks jurisdiction over this claim.

Furthermore, the jurisdictional doctrine of mootness precludes Westlake's claims for relief. A case becomes moot when the issues presented are no longer live or the parties lack a "legally cognizable interest" in the case's outcome. *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). If a controversy is moot, a federal court has no subject matter jurisdiction over the claim and must accordingly dismiss it. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). Count II of Westlake's First Amended Complaint asks this Court to prohibit Goodrich and PolyOne "from pursuing the matters raised in the Ohio Litigation" in any court other than the United States District Court for the Western District of Kentucky. (Docket No. at 11.) Goodrich's action is presently pending before this Court in accordance with the April 8, 2014 transfer order of the United States District Court for the Northern District of Ohio. Upon the case's transfer, no party is pursuing the matters at issue in any court outside of this district.

Having determined that no subject matter jurisdiction exists and that Westlake's claim is now moot, the Court has no basis upon which to reach the substance of Westlake's claims. However, the Court nonetheless notes that Westlake's claim against PolyOne suffers a fundamental flaw: Westlake has not alleged that PolyOne has initiated litigation against Westlake in any jurisdiction. The cardinal rule of contract interpretation guides the Court's analysis: that is, "[i]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1996). The Court must give the contract's plain, unambiguous language its usual meaning. *Id.* (citing *Bays v. Mahan*, 362 S.W.2d 732 (Ky. 1962)); *United Ins. Co. of Am. V. Gerstle*, 339 S.W.2d 945,

9

946 (Ky. 1960) (citing *U.S. Fidelity & Guaranty Co. v. Lairson*, 271 S.W.2d 897 (Ky. 1954)). Here, given their plain meaning, the terms of the contract cannot be construed to preclude PolyOne from filing responsive briefs or arguing that no subject matter jurisdiction exists. Moreover, PolyOne initiated no "action[s] or proceeding[s]" in Ohio Court—indeed, PolyOne was named as a defendant. Accordingly, Westlake's breach of contract claim against PolyOne is subject to dismissal.

Therefore, the Defendants' Motions to Dismiss, (Docket Nos. 40, 42), are hereby GRANTED, and all claims against each Defendant are hereby DISMISSED. An appropriate order shall issue concurrently with this opinion.